ANDREW D. STOLPER (205462)
JASON M. FRANK (190957)
SCOTT H. SIMS (234148)
**FRANK SIMS & STOLPER LLP**
19800 MacArthur Blvd., Suite 855
Irvine, CA 92612
Telephone: (949) 201-2400
Facsimile: (949) 201-2405
Email: astolper@lawfss.com
Email: jfrank@lawfss.com
Email: ssims@lawfss.com

FRANKLIN D. AZAR (*pro hac vice* forthcoming)
MICHAEL D. MURPHY (*pro hac vice* forthcoming)
BRIAN HANLIN (*pro hac vice* forthcoming)
**FRANKLIN D. AZAR & ASSOCIATES, P.C.**
14426 East Evans Avenue
Aurora, CO 80014
Telephone: (303) 757-3300
Fax: (720) 231-5131
Email: azarf@fdazar.com
Email: murphym@fdazar.com
Email: hanlinb@fdazar.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARK EDWARD VENNERHOLM II & REANNA ANN VENNERHOLM, individually and on behalf of a class of similarly situated individuals, <br><br> Plaintiffs, <br><br> vs. <br><br> GEICO CASUALTY COMPANY, GEICO INDEMNITY COMPANY, GEICO GENERAL INSURANCE COMPANY, AND GOVERNMENT EMPLOYEES INSURANCE COMPANY, <br><br> Defendants | Case No.: **'21CV806  GPC BLM** <br><br> **CLASS ACTION COMPLAINT** <br><br> JURY TRIAL DEMANDED <br><br> (1) Violation of the California Consumer Privacy Act, Civ. Code § 1798.150 *et seq.* <br> (2) Violation of California Business & Professions Code § 17200, *et seq.* <br> (3) Negligence <br> (4) Breach of Contract <br> (5) Breach of the Implied Covenant of Good Faith and Fair Dealing <br> (6) Breach of the Implied Contract <br> (7) Breach of Confidence |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

THE PARTIES ..................................................................................................... 4

    A.  Plaintiffs ................................................................................................ 4

    B.  Defendants ............................................................................................. 4

JURISDICTION .................................................................................................. 4

VENUE ............................................................................................................... 5

FACTUAL ALLEGATIONS ............................................................................... 5

CLASS ACTION ALLEGATIONS ..................................................................... 9

    FIRST CAUSE OF ACTION (Violation of the California Consumer Privacy
        Act, Civ. Code § 1798.150 *et seq.*)........................................................ 12

    SECOND CAUSE OF ACTION (Violation of California Business &
        Professions Code § 17200, *et seq.*)........................................................ 15

    THIRD CAUSE OF ACTION (Negligence)..................................................... 17

    FOURTH CAUSE OF ACTION (Breach of Contract) ..................................... 19

    FIFTH CAUSE OF ACTION (Breach of the Implied Covenant of Good Faith
        and Fair Dealing) ................................................................................... 20

    SIXTH CAUSE OF ACTION (Breach of the Implied Contract) ..................... 23

    SEVENTH CAUSE OF ACTION (Breach of Confidence) .............................. 24

RELIEF REQUESTED ......................................................................................... 25

DEMAND FOR JURY TRIAL .............................................................................. 26

Plaintiffs Mark Edward Vennerholm II & Reanna Ann Vennerholm (collectively "Plaintiffs"), by and through their counsel, allege the following against GEICO Casualty Company, GEICO Indemnity Company, GEICO General Insurance Company, and Government Employees Insurance Company (collectively, "Defendants" or "Geico") based upon the investigation of his counsel and information and belief, except as to those allegations specifically pertaining to themselves or their counsel, which are based upon personal knowledge:

## INTRODUCTION

1.     This case involves a matter of growing concern in modern culture, that of the security of personal data and information in an era of exponential technological expansion. Specifically, this is a class action lawsuit against Geico arising from its failure to safeguard the Personal Identifying Information ("PII") of Geico customers by allowing fraudsters unauthorized access into Geico's online sales systems from January 21, 2021 to March 1, 2021, (the "Data Breach"), which compromised Geico customers' PII. The proposed Class is comprised of all Geico customers who reside in the United States whose personal or financial information was accessed, compromised, or stolen in the Data Breach ("Geico Customers").

2.     Geico is one of the largest auto insurers in the United States. Due to its size and the nature of its business, Geico stores what hackers would consider a "treasure-trove" of PII from Geico Customers.

3.     Because of the extensive confidential information that Geico stores, Geico maintains a privacy policy that makes specific representations to Geico Customers regarding its affirmative duty to protect its customers' PII. In its Privacy Policy, Geico represents to its customers that "We restrict access to your Information to employees who we have determined need it to provide products or services to you. We train our employees to safeguard customer information, and we require them to sign confidentiality and non-disclosure agreements. We maintain a variety of physical, electronic, and procedural safeguards to protect your Information from unauthorized access by third parties."[1]

---

[1] Geico's Privacy Policy (eff. July 1, 2020), https://media.geico.com/legal/privacy_policy.htm#conf_security.

4. Geico further represents in its Privacy Policy that "Your Security is Important" and guides its customers to review Geico's Internet Security Policy, which is linked directly to Geico's Privacy Policy.[2]

5. In its Internet Security Policy, Geico represents that "At GEICO.com, the privacy and security of customer data is as important to us as it is to you. Physical safeguards, procedural controls and data access controls protect your data from unauthorized access. We continually monitor our systems to prevent unauthorized attempts at intrusion."[3]

6. Geico's customers reasonably expected Geico to maintain strict confidentiality of their PII in Geico's possession. However, Geico, contrary to its promises and representations, failed to adequately protect its customers' PII.

7. On April 15, 2021, Geico filed a notice ("Notice") with the California Office of the Attorney General revealing that its customers' PII was subject to a data security breach between January 21, 2021 and March 1, 2021.[4] More specifically, in its Notice, Geico revealed that fraudsters used information about Geico's customers to hack into Geico's online sales systems and access their driver's license number. Geico further stated in its Notice that it believed the fraudsters could use the stolen information to fraudulently apply for unemployment benefits in the names of Geico's customers.  In its Notice, Geico advised its customers to carefully review any mail they receive from state unemployment agencies or departments and to contact that agency or department if there is any chance fraud is being committed.  Geico further advised its customers to "be vigilant for incidents of fraud or identity theft by reviewing your account statements and credit reports for any unauthorized activity."[5]

8. As a result of Geico's failure to maintain adequate security measures, Geico's

---

[2] Geico's Internet Security Policy, https://media.geico.com/legal/security_policy.htm. Geico's Privacy Policy and Internet Security Policy are attached hereto as Exhibits A and B, respectively.

[3] Geico's Internet Security Policy, *supra*.

[4] Notice of Data Breach (Apr. 9, 2021), https://oag.ca.gov/system/files/DL3_IndNoticeLttr_CA_Redacted.pdf, attached hereto as Exhibit C.

[5] *Id*.

customers' personal and private information has been compromised and remains vulnerable.

9.      The Data Breach was a successful attempt by a malicious third party to steal Geico's customers' PII on a mass scale. The only reason a hacker would steal PII on a mass scale would be to use that information to commit future acts of cyber-fraud and identity theft -- in this case, according to Geico, to fraudulently apply for unemployment benefits in Geico's customers' names.  It is a virtual certainty that the hackers will engage in future acts of fraud or identity theft either directly, or indirectly by selling the Geico customers' PII on the dark web to other malicious actors. Thus, Plaintiffs, and the putative class members, are at an exceptionally high risk of future acts of identity theft. Moreover, the ill-gotten PII could be combined with information stolen during other computer hacks and data breaches to create increasingly complex and convincing scams.

10.     As a direct result and a necessary consequence of the Data Breach, Geico's customers have suffered an ascertainable loss in that they must undertake additional security measures, some at their own expense, to minimize the risk of future data breaches.

11.     Moreover, as a direct result and a necessary consequence of the Data Breach, Geico's customers have suffered an ascertainable loss in that they have incurred otherwise-unnecessary out-of-pocket expenses and suffered opportunity loss due to the time they have been required to spend in attempts to mitigate the damages caused by the Data Breach.

12.     Furthermore, Geico essentially granted unauthorized third parties/hackers access to Plaintiffs' and other Geico customers' PII without compensating them. The value of their PII, in part derived from its privacy, should be exclusively controlled by Geico's customers, which is precisely what Plaintiffs expected.

13.     As a result of Geico's failure to maintain adequate security measures, Plaintiffs and the putative Class members continue to suffer an ongoing and escalating accumulation of damages, as the Data Breach has rendered them more susceptible to future data breaches, identity theft, and other kinds of online fraud.

# THE PARTIES

**A.  Plaintiffs**

14.     Plaintiffs Mark Edward Vennerholm II & Reanna Ann Vennerholm ("Plaintiffs") are, and at all times mentioned herein were, citizens of the State of California, residing in Coronado, California. Plaintiffs provided Geico with their PII in connection with their purchase of automobile insurance from Geico. In purchasing automobile insurance from Geico, Plaintiffs entrusted Geico with their PII for all relevant time periods.

15.     As a result of, and in response to notification of the Data Breach, Plaintiffs have suffered a loss of privacy and nuisance, and must spend, time, money, and effort monitoring accounts and trying to ascertain and mitigate the extent of the damage done to his privacy due to the breach, and the level of increased threat they now face. They experience significant stress, fear, and anxiety as a result, on a near-daily basis.

**B.     Defendants**

16.     Defendants GEICO Casualty Company, GEICO Indemnity Company, GEICO General Insurance Company, and Government Employees Insurance Company are Maryland corporations with their principal places of business in Chevy Chase, Maryland.

17.     At all relevant times, Defendants were and are engaged in business in San Diego County and throughout the United States of America.

# JURISDICTION

18.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) because this action arises under the Class Action Fairness Act, in that, as to each Class defined herein:

a)   the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs;

b)   this is a class action involving 100 or more class members; and

c)   this is a class action in which at least one member of the Plaintiff class is a citizen of a state different from at least one of the Defendants.

19.     The Court has personal jurisdiction over Geico, which has at least minimum contacts with the State of California because it has conducted business there and it has availed

itself of California's markets through selling auto insurance in the state.

## VENUE

20.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c), and (d) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

21.     Geico, through its sale of auto insurance, has established sufficient contacts in this District such that personal jurisdiction is appropriate. Geico is deemed to reside in this District pursuant to 28 U.S.C. § 1391(a).

22.     In addition, Geico has availed itself of California's markets through its sale of auto insurance in the state. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## FACTUAL ALLEGATIONS

23.     Geico is one of the largest auto insurers in the United States. Based on the nature of its business and the size of its operations, Geico maintains a significant amount of PII and other confidential information from its customers.

24.     Geico's customers expect Geico to maintain strict confidentiality of the PII in its possession. Throughout the course of its business, Geico has collected and maintained an extensive amount of its customers' PII. Geico's customers provide their PII to Geico in reliance on Geico's assurances in its Privacy Policy, Internet Security Policy and elsewhere that it will protect their PII from unauthorized access.

25.     At all relevant times, Geico represented to its customers, in its Privacy Policy and its Internet Security Policy, that their privacy and security is of utmost importance to Geico. In reliance on Geico's promises and representations, Geico's customers provided Geico with their PII.

26.     In its Privacy Policy, Geico represents that:

> We restrict access to your Information to employees who we have determined need it to provide products or services to you. We train our employees to safeguard customer information, and we require them to sign confidentiality and non-disclosure agreements. We maintain a variety of physical, electronic, and procedural safeguards to protect your Information from unauthorized access by third parties.

*Id.*[6]

27.     Geico further represents in its Privacy Policy that "Your Security is Important" and guides Geico Customers to review Geico's Internet Security Policy, which is linked within Geico's Privacy Policy.

28.     In its Internet Security Policy, Geico represents that:

> At GEICO.com, the privacy and security of customer data is as important to us as it is to you. Physical safeguards, procedural controls and data access controls protect your data from unauthorized access. We continually monitor our systems to prevent unauthorized attempts at intrusion.

*Id.*[7]

29.     On April 15, 2021, Geico filed its Notice with the California Office of the Attorney General revealing that its customers' PII was subject to a data security breach between January 21, 2021 and March 1, 2021.[8] More specifically, in its Notice, Geico revealed that fraudsters used information about Geico's customers to hack into Geico's online sales systems and access their driver's license number. Geico further stated in its Notice that it believed the fraudsters could use the stolen information to fraudulently apply for unemployment benefits in the names of Geico's customers.  In its Notice, Geico advised its customers to carefully review any mail they receive from state unemployment agencies or departments and to contact that agency or department if there is any chance fraud is being committed.  Geico further advised its customers to be "vigilant for incidents of fraud or identity theft by reviewing your account statements and credit reports for any unauthorized activity."[9]

30.     Geico, contrary to its promise and representations in its Privacy Policy and Internet Security Policy, failed to protect its customers' PII.

31.     The Geico customers' PII compromised in the Data Breach is highly valuable to identity thieves who can use this PII to unlawfully gain access to a variety of existing accounts and websites.

32.     Identity thieves can also use the PII to harm Plaintiffs and the other Class

[6] Ex. A.

[7] Ex. B.

[8] Ex. C.

[9] *Id.*

members through embarrassment, blackmail, or harassment either in person or online, or to commit other types of fraud including fraudulently obtaining tax returns and refunds, and government benefits -- as Geico understands to be the case in this Data Breach.

33.    A Presidential identity theft report from 2007 states that:

> In addition to the losses that result when identity thieves fraudulently open accounts or misuse existing accounts, . . . individual victims often suffer indirect financial costs, including the costs incurred in both civil litigation initiated by creditors and in overcoming the many obstacles they face in obtaining or retaining credit. Victims of non-financial identity theft, for example, health-related or criminal record fraud, face other types of harm and frustration.

> In addition to out-of-pocket expenses that can reach thousands of dollars for the victims of new account identity theft, and the emotional toll identity theft can take, some victims have to spend what can be a considerable amount of time to repair the damage caused by the identity thieves. Victims of new account identity theft, for example, must correct fraudulent information in their credit reports and monitor their reports for future inaccuracies, close existing bank accounts, open new ones, and dispute charges with individual creditors.

*Id.*[10]

34.    To put identity theft into context, the 2013 Norton Report – based on one of the largest consumer cybercrime studies ever conducted – estimated that at that time, the global price tag of cybercrime was around ***$113 billion*** with the average cost per victim being $298 dollars.[11]

35.    The problems associated with identity theft are exacerbated by the fact that many identity thieves will wait years before attempting to use the personal information they obtain. Indeed, to protect themselves, Plaintiffs and the other Class members will need to remain vigilant against unauthorized data use for years and decades to come. It is axiomatic that once stolen, PII can be used in a number of different and sinister ways. One of the most common methods of illicit use is that the information is offered for sale on the "Dark Web," which is a heavily encrypted part of the internet that makes it difficult for authorities to detect the location or

---

[10] *The President's Identity Theft Task Force, Combating Identity Theft: A Strategic Plan*, U.S. Federal Trade Commission, April 2007, https://www.ftc.gov/sites/default/files/documents/reports/combating-identity-theft-strategic-plan/strategicplan.pdf.

[11] *2013 Norton Report*, Norton by Symantec, https://yle.fi/tvuutiset/uutiset/upics/liitetiedostot/norton_raportti.pdf.

CLASS ACTION COMPLAINT

owners of a particular website. Due to its concealed and sometimes disguised nature, coupled with the intentional use of special applications to maintain anonymity, the Dark Web is a haven for a plethora of illicit activity, including the trafficking of stolen personal information captured via data breaches or hacks.[12] A 2018 study found that an individual's online identity is worth as much as approximately $1,170 on the Dark Web.[13]

36.     Scammers also use PII to target victims through *phishing scams*.[14] Phishing occurs when scammers, using PII they have illicitly obtained about their victims, send fraudulent emails, texts, or copycat websites to get victims to share additional valuable PII – such as account numbers, Social Security numbers, or login IDs and passwords.[15] Scammers use victims' information, including PII, to steal victims' money, identity, or both.[16] Scammers also use phishing emails to get access to a victim's computer or network, and then install programs like ransomware that can lock a victim out of important files on their computer.[17] According to one Federal Bureau of Investigation study, scammers collected more than $676 million in 2017 alone through two types of phishing scams: "Business Email Compromise" and "Email Account Compromise."[18]

37.     As a result of Geico's failure to maintain adequate security measures, its customers' PII has been compromised and remains vulnerable. Geico customers have suffered an ascertainable loss in that they must now undertake additional security measures, most at their

---

[12]Ellen Sirull, *What is the Dark Web?*, Experian, Apr. 8, 2018, https://www.experian.com/blogs/ask-experian/what-is-the-dark-web/; *see also* Brian Hamrick, *The dark web: A trip into the underbelly of the internet*, WLWT News, Feb. 9, 2017, http://www.wlwt.com/article/the-dark-web-a-trip-into-the-underbelly-of-the-internet/8698419.

[13]Simon Migliano, Dark Web Market Price Index (US Edition), TOP10VPN, Feb. 28, 2018, https://www.top10vpn.com/privacy-central/privacy/dark-web-market-price-index-feb-2018-us/.

[14] *How to Recognize and Avoid Phishing Scams*, U.S. Federal Trade Commission, May 2019, https://www.consumer.ftc.gov/articles/0003-phishing.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *2017 Internet Crime Report*, U.S. Federal Bureau of Investigation, https://pdf.ic3.gov/2017_IC3Report.pdf.

own expense, to minimize the risk of future data breaches.

38.     Plaintiffs' and Class members' ascertainable losses in undertaking additional security measures is consistent with Javelin Strategy & Research's 2017 compilation of consumer complaints to the FTC showing that the average out-of-pocket cost to consumers for identity theft was $429.00.

39.     And the out-of-pocket costs is not a one-time occurrence. Instead, credit monitoring and protection should go on for no less than five years following a breach of this kind. According to the 2017 Ponemon report, the Consumer Financial Protection Bureau report as of 1Q 2017 and the Bureau of Justice Statistics ("BJS") between 2010 and 2014, stolen PII data is re-used for up to five years after a breach. In 2015, the last BJS report, commissioned on 2014 FTC data, calculated the average potential direct loss for unmonitored high value consumers to be $1,349 and out-of-pocket costs – including soft costs for full-time equivalent hours of missed work (potential loss of income) due to time spent resolving identity theft issues – to be $3,903, with the average time to resolve a known identity theft being greater than one month. These BJS independent surveys indicate that over 35% of victims have unresolved, related identity theft issues for up to one year after a breach and multiple non-commissioned surveys have also shown a high repeat occurrence of identity theft victims who are re-victimized less than three years from the original incident.

40.     The Data Breach and disclosure of Geico's customers' PII has immediately, directly and substantially increased Plaintiffs', and the other Class members', risk of identity theft. Also, as a result of the Data Breach, Plaintiffs and the Class members have suffered nuisance and a loss of privacy and must now expend additional time and money mitigating the threat of identity theft, which would not be necessary but for the Data Breach.

## CLASS ACTION ALLEGATIONS

41.     Plaintiffs brings this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and 23(c)(4). This action easily satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those

1   provisions.

2       42.     The Class and Subclass are defined as (collectively, the "Class"):

3   **Nationwide Class**: All individuals residing in the United States whose personal or
    financial information was accessed, compromised, or stolen in the  Data Breach.

4

5   **California Subclass**: All individuals residing in the California whose personal or
    financial information was accessed, compromised, or stolen in the Data Breach.

6       43.     Excluded from the Class are:

7   a)   Geico, any entity or division in which Geico has a controlling interest, and their

8        employees, consultants, legal representatives, officers, directors, assigns, and

9        successors;

10  b)   the Judge to whom this case is assigned and the Judge's staff;

11  c)   any Judge sitting in the presiding state and/or federal court system who may hear

12       an appeal of any judgment entered; and

13  d)   those persons who have suffered personal injuries as a result of the facts alleged

14       herein.

15      44.     Plaintiffs reserves the right to amend the Class definition if discovery and further

16  investigation reveal that the Class should be expanded or otherwise modified

17      45.     Numerosity: Geico is one of the largest auto insurance companies in the United

18  States. Additional, Geico disclosed the Data Breach by filing the Notice with the California

19  Office of the Attorney General. California law requires that any person or business that is

20  required to issue a security breach notification to more than 500 California residents as a result of

21  a single breach of the security system shall electronically submit a single sample copy of that

22  security breach notification to the Attorney General. Thus, the persons who comprise the Class

23  are so numerous that joinder is impracticable. The disposition of the claims of these Class

24  members in a single action will provide substantial benefits to all parties and to the Court. The

25  Class members are readily identifiable from information and records in Geico's possession,

26  custody, or control.

27      46.     Typicality: Plaintiffs' claims are typical of the claims of the Class members in

28  that Plaintiffs, like all Class members, had his information accessed, compromised, or stolen in

---

10

the Data Breach. The representative Plaintiffs and the Class members have been damaged by Geico's misconduct in that they have had to undertake additional security measures, at their own time and expense, to minimize the risk of future data breaches, and/or will be required to do so. Furthermore, because there is a common factual basis of Geico's misconduct to Plaintiffs and all Class members, there is a common thread resulting in injury to Plaintiffs and all Class members.

47.     <u>Commonality</u>: There are numerous questions of law and fact common to Plaintiffs and the Class members that predominate over any question affecting only individual Class members. These common legal and factual issues include, but are not limited to, the following:

a) Whether Geico owed a duty of care to Plaintiffs and Class members with respect to the security of their PII;

b) Whether Geico breached its legal and/or contractual duty to use reasonable security measures to protect Plaintiffs' and Class members' PII;

c) Whether Geico took reasonable steps and measures to safeguard Plaintiffs' and Class members' PII;

d) Whether Geico breached its duty to exercise reasonable care in handling Plaintiffs' and Class members' PII;

e) Whether Geico's acts and omissions described herein give rise to class claims of negligence;

f) Whether Geico's security procedures and practices violated California Business & Professions Code §§ 17200 et seq.;

g) Whether Geico knew or should have known of the Data Breach and the timing of when Geico knew or should have known of the Data Breach; and

h) Whether Plaintiffs and other Class members are entitled to damages or equitable relief, including, but not limited to, a preliminary and/or permanent injunction.

48.     <u>Adequate Representation</u>: Plaintiffs will fairly and adequately protect the interests of the Class members. Plaintiffs has retained attorneys experienced in the prosecution of complex class actions, including consumer class actions, and Plaintiffs intends to prosecute this action vigorously.

49.     <u>Predominance and Superiority</u>: Plaintiffs and Class members have all suffered, and will continue to suffer, harm and damages as a result of Geico's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. The value of the individual Class members' claims, when compared to the costs of investigation and prosecution of those claims, makes it more probable than not that only a few Class members could afford to seek legal redress for Geico's misconduct. Absent a class action, Class members will continue to incur damages, and Geico's misconduct will continue without remedy. Class treatment of common questions of law and fact will also be a superior method to address these claims as opposed to multiple individual actions or piecemeal litigation. In this regard, class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION
### Violation of the California Consumer Privacy Act, Civ. Code § 1798.150 *et seq*.
### (On behalf of Plaintiffs and on behalf of the California Subclass)

50.     Plaintiffs incorporate by reference the allegations contained in each and every paragraph of this Complaint.

51.     Plaintiffs bring this cause of action on behalf of themselves and on behalf of the California Subclass.

52.     The California Consumer Privacy Act ("CCPA"), portions of which were operative beginning January 1, 2020, was enacted by the California Legislature "to further the constitutional right of privacy and to supplement existing laws relating to consumers' personal information, including, but not limited to, Chapter 22 (commencing with Section 22575) of Division 8 of the Business and Professions Code and Title 1.81 (commencing with Section 1798.80)." Cal. Civ. Code § 1798.100. The CCPA applies to "the collection and sale of all personal information collected by a business from consumers." Id.

53.     "Businesses," defined to include a "corporation" that "collects consumers' personal information" that "does business in the State of California" and has annual gross

revenues in excess of $25 million, are required to comply with the CCPA. Cal. Civ. Code § 1798.140(c). Geico is a "business" under the CCPA.

54.     The CCPA protects "consumers." "Consumer" is defined as "a natural person who is a California resident[.]" Cal. Civ. Code § 1798.140(g). Plaintiffs and members of the California Subclass are "consumers" within the meaning of the CCPA.

55.     The protections of the CCPA extend to "personal information" of consumers. "Personal information" is defined by the CCPA to include "information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household." Cal. Civ. Code § 1798.140(o)(1). "Personal information includes, but is not limited to, the following if it identifies, relates to, describes, is reasonably capable of being associated with, or could be reasonably linked, directly or indirectly, with a particular consumer or household: (A) Identifiers such as...  driver's license number, …." Cal. Civ. Code § 1798.140(o)(1)(A). The PII of Plaintiffs and members of the California Subclass that was compromised in Geico's data breach included "personal information" within the meaning of the CCPA.

56.     The CCPA provides consumers with the right to institute a civil action where the consumers' "nonencrypted and nonredacted personal information" was the subject of "an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information." Cal. Civ. Code § 1798.150(a)(1).

57.     Plaintiffs and California Subclass members provided to Geico their nonencrypted and nonredacted personal information as defined in § 1798.81.5 in the form of their PII.

58.     Geico, as a "business" covered by the CCPA, owed a duty to Plaintiffs and members of the California Subclass to implement and maintain reasonable security procedures and practices to protect the PII of Plaintiffs and members of the California Subclass.

59.     Geico breached this duty. On April 15, 2021, Geico filed a Notice with the California Office of the Attorney General revealing that its customers' PII was subject to a data

security breach between January 21, 2021 and March 1, 2021.  More specifically, in its Notice, Geico revealed that fraudsters used information about Geico's customers to hack into Geico's online sales systems and access their driver's license number. Geico further stated in its Notice that it believed the fraudsters could use the stolen information to fraudulently apply for unemployment benefits in the names of Geico's customers'.  In its Notice, Geico advised its customers to carefully review any mail they receive from state unemployment agencies or departments and to contact that agency or department if there is any chance fraud is being committed.  Geico further advised its customers to be "vigilant for incidents of fraud or identity theft by reviewing your account statement and credit reports for any unauthorized activity."

60.     The fact that Plaintiffs' and the California Subclass's PII was accessed without authorization establishes that Geico did not take adequate data security measures to store and protect its customers' PII. Geico failed to take adequate security measures to protect Plaintiffs' and the California Subclass members' PII.

61.     As a direct and proximate result of Geico's acts and omissions, Plaintiffs and the members of the California Subclass were subjected to unauthorized access and exfiltration, theft, or disclosure as a result of Geico's violation of the duty.

62.     On behalf of the California Subclass, Plaintiffs seeks injunctive relief in the form of an order (a) enjoining Geico from continuing to violate the CCPA; and (b) requiring Geico to employ adequate security practices consistent with law and industry standards to protect class members' PII.

63.     Plaintiffs and California Subclass members are at high risk of suffering, or have already suffered, injuries that cannot be remedied monetarily, such as reductions to their credit scores and identity theft. As such, the remedies at law available to Plaintiffs and California Subclass members are wholly inadequate by themselves.

64.     The full extent of the existing and potential harm caused by Geico's failure to protect its customers' PII cannot be remedied by monetary damages alone because monetary compensation does nothing to prevent the reoccurrence of another data breach in the future.

65.     Plaintiffs presently seeks only injunctive relief and any other relief the court

deems proper pursuant to this section, such as attorneys' fees. Plaintiffs will serve written notice identifying Geico's violation of Civ. Code § 1798.150(a) demanding that the Data Breach be cured, and will amend this Complaint to seek statutory damages pursuant to Civ. Code § 1798.150(a)(1)(A) if Geico does not timely cure the Data Breach.

**SECOND CAUSE OF ACTION**
**Violation of California Business & Professions Code § 17200,** *et seq.*
**(On behalf of Plaintiffs and on behalf of the California Subclass)**

66.     Plaintiffs incorporate by reference the allegations contained in each and every paragraph of this Complaint.

67.     Plaintiffs brings this cause of action on behalf of themselves and on behalf of the California Subclass.

68.     California Business and Professions Code section 17200 et seq., also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice."

*The Unlawful Prong of the UCL*

69.     A cause of action may be brought under the "unlawful" prong of the UCL if a practice violates another law. Such an action borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under the UCL.

70.     Here, Geico's "unlawful" acts and practices include violating California Civil Code section 1798.150 as described above, and failing to implement and maintain reasonable security measures contrary to legislatively declared public policy that seeks to protect consumers' data and ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTC Act, 15 U.S.C. § 45 and California's Consumer Records Act, Cal. Civ. Code § 1798.81.5 pertaining to "security procedures and practices with respect to personal information about California residents."

*The Unfair Prong of the UCL*

71.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to

15

consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

72.     Here, Geico's "unfair" acts and practices include:

a)   failing to abide by the provisions of California Civil Code section 1798.150

b)   failing to implement and maintain reasonable security measures contrary to legislatively declared public policy that seeks to protect consumers' data and ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTC Act, 15 U.S.C. § 45 and California's Consumer Records Act, Cal. Civ. Code § 1798.81.5

c)   failing to implement and maintain reasonable security measures to protect Plaintiffs' and the California Subclass's PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the data breach. Geico failed to identify foreseeable security risks, remediate identified security risks, and adequately improve security despite knowing the risk of cybersecurity incidents. This conduct, with little if any utility, is unfair when weighed against the harm to Plaintiffs and the California Subclass, whose PII has been compromised; and

d)   failing to implement and maintain reasonable security measures, which also led to substantial consumer injuries, as described above, and which are not outweighed by any countervailing benefits to consumers or competition. Moreover, because consumers could not know of Geico's inadequate security, consumers could not have reasonably avoided the harms that Geico caused.

***The Fraud Prong of the UCL***

73.     A business act or practice is "fraudulent" within the meaning of the UCL if members of the public are likely to be deceived.

74.     Here, Geico's "fraudulent" acts and practices include:

a)   misrepresenting that it would protect the privacy and confidentiality of Plaintiffs' and the California Subclass's PII, including by implementing and maintaining reasonable security measures; and

CLASS ACTION COMPLAINT

b)  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs' and the California Subclass's PII.

75.     Geico's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Geico's data security and ability to protect the confidentiality of consumers' PII.

76.     As a direct and proximate result of Geico's unfair, unlawful, and fraudulent acts and practices, Plaintiffs and the California Subclass were injured and lost money or property, including, but not limited to: the money received by the Geico for its services; the loss of the benefit of their bargain with and overcharges by Geico as they would not have paid Geico for services or would have paid less for such services but for the violations alleged herein; losses from fraud and identity theft; any costs they will have to incur for credit monitoring and identity protection services; time and expenses related to monitoring their financial accounts for fraudulent activity; loss of value of their PII; and an increased, imminent risk of fraud and identity theft.

77.     Plaintiffs and the California Subclass seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Geico's unfair, unlawful, and fraudulent business practices or use of their PII; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure section 1021.5; injunctive relief; and other appropriate equitable relief.

### THIRD CAUSE OF ACTION
**Negligence**
**(On behalf of Plaintiffs and the Nationwide Class)**

78.     Plaintiffs incorporate by reference the allegations contained in each and every paragraph of this Complaint.

79.     Geico required Plaintiffs and the Class to submit sensitive PII in order to purchase Geico insurance products. Geico stored this sensitive and valuable PII on its computer and data storage systems.

80.     By collecting, storing, using, and profiting from this data, Geico had a duty of care to Plaintiffs and the Class to exercise reasonable care in obtaining, retaining, securing,

safeguarding, deleting, and protecting this PII in Geico's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. More specifically, this duty included, among other things: (a) designing, maintaining, and testing Geico's security systems and data storage architecture to ensure that Plaintiffs and the Class's PII was adequately secured and protected; (b) implementing processes that would detect an unauthorized breach of Geico's security systems and data storage architecture in a timely manner; (c) timely acting on all warnings and alerts, including public information, regarding Geico's security vulnerabilities and potential compromise of the compiled data of Plaintiffs and the Class; (d) maintaining and implementing data security measures consistent with industry standards; and (e) instituting data security policies and procedures, and adequately training employees and franchisees on such policies and procedures.

81.     Geico had common law duties to prevent foreseeable harm to Plaintiffs and the Class. These duties existed because Plaintiffs and members of the Class were the foreseeable and probable victims of any inadequate security practices. In fact, not only was it foreseeable that Plaintiffs and the Class would be harmed by the failure to protect their PII because hackers routinely attempt to steal such information and use it for nefarious purposes, Geico knew that it was more likely than not Plaintiffs and other class members would be harmed by such theft.

82.     Geico had a duty to monitor, supervise, control, or otherwise provide oversight to safeguard the PII that was collected and stored on Geico's computer systems.

83.     Geico's duties to use reasonable security measures also arose as a result of the special relationship that existed between Geico, on the one hand, and Plaintiffs and members of the Class, on the other hand. The special relationship arose because Plaintiffs and members of the Class entrusted Defendant with their PII in order to purchase Geico insurance products. Geico alone could have ensured that its security systems and data storage architecture were sufficient to prevent or minimize the data breach.

84.     Geico knew or should have known that its computer systems and data storage architecture were vulnerable to unauthorized access and targeting by hackers for the purpose of stealing and misusing confidential PII.

85.     Geico breached the duties it owed to Plaintiffs and Class members described above and thus were negligent. Geico breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the PII of Plaintiffs and the Class; (b) detect the breach while it was ongoing; (c) maintain security systems consistent with industry standards; and (d) institute data security policies and procedures, and adequately train employees and franchisees on such policies and procedures.

86.     But for Geico's wrongful and negligent breach of its duties owed to Plaintiffs and the Class members, their PII would not have been compromised.

87.     As a direct and proximate result of Geico's negligence, Plaintiffs and the Class have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the data breach reviewing bank statements, credit card statements, and credit reports; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII; lost benefit of their bargains and overcharges for services; and other economic and non-economic harm.

**FOURTH CAUSE OF ACTION**
**Breach of Contract**
**(On behalf of Plaintiffs and the Nationwide Class)**

88.     Plaintiffs incorporate by reference the allegations contained in each and every paragraph of this Complaint.

89.     At all relevant times, Geico and Plaintiffs and the Class mutually assented to and therefore were bound by the version of Geico's Privacy Policy and Internet Security Policy (the "Contract") that was operative at the time Plaintiffs and each of the Class members purchased

products from Geico.

90.     Geico's Privacy Policy forms a binding contract between Geico and Plaintiffs and the Class.

91.     Throughout the Class Period, Geico affirmatively stated in the Contract that it would utilize sufficient data security protocols and mechanisms to protect Geico Customers' data from unauthorized access.

92.     Specifically, Geico provided that "We restrict access to your Information to employees who we have determined need it to provide products or services to you. We train our employees to safeguard customer information, and we require them to sign confidentiality and non-disclosure agreements. We maintain a variety of physical, electronic, and procedural safeguards to protect your Information from unauthorized access by third parties," and that "At GEICO.com, the privacy and security of customer data is as important to us as it is to you. Physical safeguards, procedural controls and data access controls protect your data from unauthorized access. We continually monitor our systems to prevent unauthorized attempts at intrusion."

93.     Geico breached the Contract by failing to have proper safeguards to protect Plaintiffs and the Class members' PII and allowing a malicious third party to access that information without permission. Geico violated its commitment to maintain the confidentiality and security of the PII of Plaintiffs and the Class and failed to comply with their own polices and industry standards related to data security.

## FIFTH CAUSE OF ACTION
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (On behalf of Plaintiffs and the Nationwide Class)

94.     Plaintiffs incorporate by reference the allegations contained in each and every paragraph of this Complaint.

95.     Plaintiffs and the Class members entered contracts with Geico, the Privacy Policy, which included the implied terms that Geico would not expose the PII to hackers and that Geico would take reasonable measures to protect the PII.

96.     In these contracts, as in every contract, there was an implied covenant of good

20

faith and fair dealing. This implied promise means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract. Good faith means honesty of purpose without any intention to mislead or to take unfair advantage of another, that is, being faithful to one's duty or obligation.

97.     Plaintiffs and the Class members performed everything that they were required to do under the contract by supplying their PII and paying for the goods in question. All conditions for Geico's performance have occurred or were excused.

98.     Geico failed to protect the PII from exposure to hackers and failed to adopt reasonable measures to protect the PII, operating a website with numerous security flaws as shown above.

99.     By doing so, Geico did not act fairly and in good faith. Good faith and fairness required Geico to protect the PII from hackers, including by adopting reasonable measures. Consumers must count on companies who collect their PII to protect that PII in order to facilitate commercial transactions, which increasingly occur over the internet.

100.    As a result of this conduct, Plaintiffs and the Class members were damaged. Plaintiffs' and the Class members' PII is being sold by nefarious individuals on the dark web. As a result, Plaintiffs and the Class members have been forced to incur out of pocket costs for credit monitoring, and to take time and effort to cancel credit cards and/or freeze accounts. Plaintiffs and the Class members have also lost the benefit of their bargain. Plaintiffs and the Class members agreed to purchase goods and provide their PII to Geico with the understanding that their PII would be protected. Had Plaintiffs and the Class members known that their PII would not be protected, they would not have agreed to pay the price which they contracted for in exchange for the goods. Plaintiffs and the Class members also face a significant risk that their PII will be stolen, that they will lose money, and that their identities will be stolen as a result of the breach. That risk only increases as time passes and no action is taken. Finally, Plaintiffs and the Class members have lost the value of their PII, which has a real market value.

101.    Plaintiffs has suffered monetary injury in fact as a direct and proximate result of the acts committed by Geico, as alleged herein, in an amount to be proven at trial, but in excess

1    of the minimum jurisdictional amount of this Court.

2        102.   Geico and Plaintiffs and the Class members entered an implied contract governing

3    the use and protection of PII when Plaintiffs and the Class members supplied their PII in order to

4    purchase goods from Geico. Plaintiffs and the Class members performed everything that they

5    were required to do under the contract by supplying their PII and paying for the goods in

6    question. All conditions required for Geico's performance have occurred or were excused.

7        103.   This contract was manifested in the conduct of the parties. By agreeing to take

8    Plaintiffs' and the Class members' PII into its possession, Geico impliedly agreed to protect that

9    PII from hackers, who were known to attempt to steal PII by hacking entities which possess it, to

10   adopt reasonable measures to protect the PII from hackers, and to timely notify Plaintiffs and the

11   Class members of a data breach should one occur. Geico knew, or had reason to know, that by

12   taking the PII, it was engaging in conduct that would lead Plaintiffs and the Class members to

13   believe that Geico would protect that data from exposure to hackers, due to the known risk of

14   hacking, which was understood by both parties to the contract. Other conduct which gives rise to

15   this contractual agreement is Geico's adoption of passwords through which Plaintiffs and the

16   Class members ostensibly kept their information private, and the posting of a Privacy Policy and

17   Internet Security Policy on Geico's website.

18       104.   Geico breached these promises. As shown, Geico allowed hackers to obtain Geico

19   Customers' PII. Geico failed to adopt reasonable security measures to protect Geico Customers'

20   data.

21       105.   As a result of these breaches, Plaintiffs and the Class members were damaged.

22   Plaintiffs' and the Class members' PII is being sold by nefarious individuals on the dark web. As

23   a result, Plaintiffs and the Class members have been forced to incur out of pocket costs for credit

24   monitoring, and to take time and effort to cancel credit cards and/or freeze accounts. Plaintiffs

25   and the Class members have also lost the benefit of their bargain. Plaintiffs and the Class

26   members agreed to purchase goods and provide their PII to Geico with the understanding that

27   their PII would be protected. Had Plaintiffs and the Class members known that their PII would

28   not be protected, they would not have agreed to pay the price which they contracted for in

exchange for the goods. Plaintiffs and the Class members also face a significant risk that their PII will be stolen, that they will lose money, and that their identities will be stolen as a result of the breach. That risk only increases as time passes and no action is taken. Finally, Plaintiffs and the Class members have lost the value of their PII, which has a real market value.

106.    Plaintiffs' and the Class members' losses were caused by Geico's breach. By allowing the hackers to obtain the PII, Geico caused Plaintiffs and the Class members to incur out-of-pocket expenses, lose the benefit of their bargain, incur the risk of identity and property theft, and lose the value of their PII. Plaintiffs has suffered monetary injury in fact as a direct and proximate result of the acts committed by Geico, as alleged herein, in an amount to be proven at trial, but in excess of the minimum jurisdictional amount of this Court.

**SIXTH CAUSE OF ACTION**
**Breach of the Implied Contract**
**(On behalf of Plaintiffs and the Nationwide Class)**

107.    Plaintiffs incorporate by reference the allegations contained in each and every paragraph of this Complaint.

108.    Plaintiffs and the Class also entered into an implied contract with Geico when they obtained services from Geico, or otherwise provided PII to Geico.

109.    As part of these transactions, Geico agreed to safeguard and protect the PII of Plaintiff and the Class members.

110.    Plaintiffs and Class members entered into implied contracts with the reasonable expectation that Geico's data security practices and policies were reasonable and consistent with industry standards. Plaintiffs and the Class members believed that Geico would use part of the monies paid to Geico under the implied contracts to fund adequate and reasonable data security practices.

111.    Plaintiffs and the Class would not have provided and entrusted their PII to Geico or would have paid less for Geico's services in the absence of the implied contract or implied terms between them and Geico. The safeguarding of the PII of Plaintiffs and Class members was critical to realize the intent of the parties.

112.    Plaintiffs and the Class members fully performed their obligations under the

23

implied contracts with Geico.

113.    Geico breached its implied contracts with Plaintiffs and the Class members to protect their PII when it failed to have security protocols and measures in place to protect that information which resulted in a data breach.

114.    As a direct and proximate result of these breaches of implied contract, Plaintiffs and the Class members sustained actual losses and damages as described in detail above including, but not limited to, that they did not get the benefit of the bargain pursuant to which they provided their PII to Geico.

115.    As a result of these breaches, Plaintiffs and the Class members were damaged. Plaintiffs' and the Class members' PII is being sold by nefarious individuals on the dark web. As a result, Plaintiffs and the Class members have been forced to incur out of pocket costs for credit monitoring, and to take time and effort to cancel credit cards and/or freeze accounts. Plaintiffs and the Class members have also lost the benefit of their bargain. Plaintiffs and the Class members agreed to purchase goods and provide their PII to Geico with the understanding that their PII would be protected. Had Plaintiffs and the Class members known that their PII would not be protected, they would not have agreed to pay the price which they contracted for in exchange for the goods. Plaintiffs and the Class members also face a significant risk that their PII will be stolen, that they will lose money, and that their identities will be stolen as a result of the breach. That risk only increases as time passes and no action is taken. Finally, Plaintiffs and the Class members have lost the value of their PII, which has a real market value.

### SEVENTH CAUSE OF ACTION
**Breach of Confidence**
**(On behalf of Plaintiffs and the Nationwide Class)**

116.    Plaintiffs incorporate by reference the allegations contained in each and every paragraph of this Complaint.

117.    Plaintiffs and Class members conveyed confidential and novel information to Geico.

118.    Geico had knowledge that the information was being disclosed in confidence.

119.    There was an understanding between Geico and the Plaintiffs and Class members

24

1   that the confidence would be maintained.

2       120.   There was a data breach/disclosure in violation of the understanding.

3       121.   As a result of these breaches, Plaintiffs and the Class members were damaged.

4   Plaintiffs' and the Class members' PII is being sold by nefarious individuals on the dark web. As

5   a result, Plaintiffs and the Class members have been forced to incur out of pocket costs for credit

6   monitoring, and to take time and effort to cancel credit cards and/or freeze accounts. Plaintiffs

7   and the Class members have also lost the benefit of their bargain. Plaintiffs and the Class

8   members agreed to purchase goods and provide their PII to Geico with the understanding that

9   their PII would be protected. Had Plaintiffs and the Class members known that their PII would

10  not be protected, they would not have agreed to pay the price which they contracted for in

11  exchange for the goods. Plaintiffs and the Class members also face a significant risk that their PII

12  will be stolen, that they will lose money, and that their identities will be stolen as a result of the

13  breach. That risk only increases as time passes and no action is taken. Finally, Plaintiffs and the

14  Class members have lost the value of their PII, which has a real market value.

**RELIEF REQUESTED**

16      122.   Plaintiffs, on behalf of themselves, and all others similarly situated, requests the

17  Court enter judgment against Geico, as follows:

18  a)   An order certifying the proposed Nationwide Class and California Subclass,

19      designating Plaintiffs as named representatives of the Nationwide Class and

20      California Subclass and designating the undersigned as Class Counsel;

21  b)   An order enjoining Geico from further unfair and deceptive business practices

22      regarding the maintenance and protection of Geico Customer's PII;

23  c)   An award to Plaintiffs and the Nationwide Class and California Subclass for

24      compensatory, exemplary, and statutory damages, including interest, in an amount

25      to be proven at trial;

26  d)   A declaration that Geico must make full restitution to Plaintiffs and Class

27      members;

28  e)   An award of attorneys' fees and costs, as allowed by law;

1       f)    An award of attorneys' fees and costs pursuant to California Code of Civil

2            Procedure § 1021.5;

3       g)    An award of pre-judgment and post-judgment interest, as provided by law; and

4       h)    Such other relief as may be appropriate under the circumstances.

5                         **DEMAND FOR JURY TRIAL**

6         123.     Pursuant to Federal Rule of Civil Procedure 38(b) and Southern District of

7 California Local Rule 3-6, Plaintiffs demand a trial by jury of any and all issues in this action so

8 triable.

9 Dated:  April 23, 2021                 Respectfully submitted,

10

11                                **Frank Sims & Stolper LLP**

12                      By: */s/ Andrew D. Stolper*
                               Andrew D. Stolper

13                                Jason M. Frank
                               Scott H. Sims

14

15                                *Attorneys for Plaintiffs Mark Edward Vennerholm II & Reanna Ann Vennerholm*

16                                **Franklin D. Azar & Associates, P.C.**

17                                Franklin D. Azar (*pro hac vice*

18                                *forthcoming*)
                               Michael D. Murphy (*pro hac vice*

19                                *forthcoming*)
                               Brian Hanlin (*pro hac vice forthcoming*)

20

21                                *Attorneys for Plaintiffs Mark Edward Vennerholm II & Reanna Ann Vennerholm*

22

23

24

25

26

27

28